JUDGE GARDEPHE

## 10 CV 6531

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



```
------------------------------------------  x
                                            :
ELLEN AGUIAR,                               :
                                            :
            Plaintiff                       :      CIV
                                            :
v.                                          :      COMPLAINT
                                            :
WILLIAM NATBONY, individually and as        :
trustee of the THOMAS S. KAPLAN 2004        :
QUALIFIED TEN YEAR ANNUITY TRUST            :
AGREEMENT and the DAFNA KAPLAN 2003         :
EIGHT YEAR ANNUITY TRUST                    :
AGREEMENT, THOMAS KAPLAN and                :
DAFNA KAPLAN,                               :
                                            :
            Defendants.                     :
------------------------------------------  x
```

Plaintiff Ellen Aguiar sues defendants William Natbony, individually and as trustee of the Thomas S. Kaplan 2004 Qualified Ten Year Grantor Retained Annuity Trust (the "Thomas Trust") and of the Dafna Kaplan 2003 Eight Year Grantor Retained Annuity Trust (the "Dafna Trust" and, together with the Thomas Trust, "the Trusts"), Thomas Kaplan, and Dafna Kaplan and alleges as follows:

### INTRODUCTION

1.      This lawsuit arises from actions taken by defendant Thomas Kaplan ("Kaplan") as a result of a bitter business dispute with his nephew, Guma Aguiar ("Guma"), a non-party to this action.  As a result of this business dispute with Guma, Kaplan launched what he termed an "offensive" across "the broadest front imaginable" which included the wrongful acts against plaintiff Aguiar -- Kaplan's sister and Guma's mother -- that give rise to this action.  (*See* Exhibit 1, December 15, 2008 E-mail from Thomas Kaplan to Ellen Aguiar.)  As one aspect of Kaplan's

vindictive "offensive," defendant William Natbony ("Natbony"), the sole trustee of the billion dollar irrevocable Trusts, and subordinate of Kaplan, who is wholly dependent upon the Kaplans for his livelihood, removed plaintiff and her issue as beneficiaries[1] of the Trusts.  In so doing, Natbony breached his fiduciary duty to plaintiff Aguiar.

2.      Natbony's removal of plaintiff as a beneficiary was not the first time he breached his duties as trustee by favoring the Kaplans.  Indeed, contrary to his obligation as a putative disinterested and unconflicted trustee, Natbony effectively ceded management of the Trusts to the Kaplans.  Natbony allowed the Kaplans to direct the investment of the corpus of the Trusts for the Kaplans' benefit including by investing millions of dollars in purchases of land and art at the direction of the Kaplans.

3.      As a result of these improper actions by the Kaplans and Natbony, the January 7, 2009 Amendments to the Trusts that removed plaintiff and her issue as beneficiaries, are invalid and plaintiff and her issue must be reinstated as beneficiaries.  In addition, and by reason of his various breaches of duty and relationship with the Kaplans, Natbony should be removed as trustee and the Court should appoint a neutral disinterested and non-conflicted successor trustee to ensure the ongoing protection of the Trusts and the beneficiaries.

## PARTIES, JURISDICTION, AND VENUE

4.      Plaintiff Aguiar is a resident of Broward County, Florida, and a citizen of the state of Florida.  She is a person interested in the Trusts in that, until she was improperly removed as a beneficiary, she was, and thus still should be, a beneficiary of the Trusts.  Plaintiff has suffered an injury in fact to her interest in the Trusts in that Natbony breached his fiduciary duty to her, and abused his fiduciary discretion, by improperly and in bad faith removing her as a beneficiary

---

[1] The other innocent family members who were removed as beneficiaries include: Adrianna Aguiar, Jannai Aguiar, Angelika Aguiar, Olivia Aguiar (a minor child), Jacob Aguiar (a minor child), Lilly Aguiar (a minor child) and Jonathan Aguiar (a minor child).

of the Trusts and by dissipating trust assets.  As the improper or wrongful acts of the defendants related to the Trusts, and impact her interests as a beneficiary thereof, plaintiff Aguiar has standing to bring this action for wrongful removal as a beneficiary of the Trusts, for injunctive relief to prevent the dissipation of the assets of the Trusts, and further for removal of a faithless and conflicted trustee.

5.      Defendant Natbony is a citizen and resident of New York State.  He has served as the sole trustee of the Thomas Trust and the Dafna Trust at all times relevant to this action.  The Trusts provide that they are to be construed under the law of New York.  As trustee of the Thomas Trust and Dafna Trust, defendant Natbony had (and still has) a fiduciary duty to the Trusts' beneficiaries, including plaintiff Aguiar.

6.      Defendant Kaplan, the Settlor of the Thomas Trust, is a citizen of New York and a resident of New York City.  Kaplan is married to defendant Dafna Kaplan.

7.      Defendant Dafna Kaplan is a resident of New York City, New York, and is a citizen of Italy and Israel.  She is the Settlor of the Dafna Trust.

8.      The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states, or citizens of different states where citizens of a foreign state are additional parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(a) because one or more defendants reside in this District and because the underlying events and omissions giving rise to this action occurred in this District.

10.     All conditions precedent to this action have been satisfied and fulfilled.

## FACTUAL ALLEGATIONS

**A.**     **The Trusts and Natbony as Trustee.**

11.     The Trusts at issue in this litigation, upon information and belief, hold over two billion dollars, almost all of which constitute proceeds of the sale of Leor Exploration and Production LLC ("Leor"), a natural gas exploration company that was founded by Kaplan and Guma in 2003.  Natbony and Kaplan were the directors of Leor.  Leor was sold in 2007 for over 2.55 billion dollars.  Almost all of the proceeds were funneled into the Trusts.

12.     The Trusts are *irrevocable* Grantor Retained Annuity Trusts (commonly referred to as "GRATS").  The Kaplans, in exchange for the broad tax advantages of a GRAT, forfeited their right to manage or otherwise dictate the affairs of the Trusts.  However, although the Kaplans received a tax advantage worth tens of millions of dollars, they violated the terms of the Trusts and the rules and regulations of the Internal Revenue Code by retaining and exercising effective control and ownership of the Trusts.

13.     Plaintiff Aguiar and her issue were named beneficiaries of the Thomas Trust at its inception on April 6, 2004.  As such, plaintiff Aguiar and her issue were entitled, at the sole discretion of a disinterested trustee, to receive income and principal after the expiration in 2014 of the Original Trust[2] term and during the lifetimes of Kaplan or his wife, Dafna.  Plaintiff is also a remainder beneficiary in the event the Kaplans and their issue should not survive the Termination of the Thomas Trust.

14.     The Dafna Trust was created on December 29, 2003, and provided that plaintiff Aguiar and her issue were remainder beneficiaries.  The Dafna Trust was amended on August 8,

---

[2] The "Original Trust," in both the Thomas and Dafna GRAT, holds the trust property for a period of ten years (in the case of the Thomas Trust) and eight years (in the case of the Dafna Trust) during which time annuity payments are made to the Settlors.  Upon expiration of the annuity period, if certain conditions are met, the trust property is held by the trustee in a "Family Trust."

2005, to add plaintiff Aguiar and her issue as lifetime income and principal beneficiaries entitled

to receive distributions from the Dafna Trust in the sole discretion of a disinterested trustee after

the expiration of the Original Trust term in 2011 and during the lifetime of Dafna or her husband

Kaplan.  Plaintiff is also a remainder beneficiary in the event the Kaplans and their issue should

not survive the Termination of the Dafna Trust.

      15.     Natbony is the trustee of each of the Trusts.  He was named as trustee of the

Thomas Trusts by Kaplan on April 6, 2004, and of the Dafna Trust by Dafna on December 29,

2003.  At the time he agreed to serve, Natbony had a long-standing relationship with the

Kaplans.  Kaplan and his various entities were clients of Natbony's as a partner (and later

counsel) at the Katten Muchin law firm during the years 2001-2010.  In 2007, Natbony stepped

down as a partner at the Katten Muchin firm and became counsel to the firm, and, in addition to

his position as trustee of the Trusts, became president of Tigris Financial Group, Ltd. ("Tigris"),

a company wholly-owned and controlled by Kaplan that purportedly performed a variety of

accounting, consulting and legal services for Kaplan-related entities, including Leor.  At the time

Natbony removed plaintiff Aguiar and her issue as beneficiaries, he was and still remains

conflicted as he derives all or substantially all of his income from entities controlled or owned by

Kaplan.  Natbony is thus dependent on Kaplan for his livelihood.

    **B.**    **<u>The Dispute Between Kaplan and His Nephew, Guma Aguiar.</u>**

      16.     Plaintiff's son Guma and Kaplan were the founders of Leor, an oil and gas

company.  Guma served as Chief Executive Officer of Leor.[3]  In or about 2007, Leor sold its

---

[3] Leor's biographical information for its CEO Guma provided:

      After assembling a diversified portfolio of energy properties in Louisiana and Texas, ranging from
      unconventional natural gas to shallow oil, in 2003 Mr. Aguiar identified and executed the
      company's acquisition of its flagship property in the Deep Bossier of East Texas.  By late 2004
      Leor had amassed the largest land position in the heart of the Deep Bossier, which has emerged as

assets to a third party for 2.55 billion dollars.  Following the sale, Kaplan and Guma had a falling

out concerning their shares of the proceeds of the sale.  Kaplan represented to Guma that he

would receive a portion of his share of the proceeds of the Leor sale as a beneficiary of Kaplan's

GRAT.  The relationship between Kaplan and Guma deteriorated in the Fall of 2008 when Guma

sought an accounting relating to the Trusts and to the proceeds of the sale of Leor, and its related

companies.  In retaliation for these actions and a dispute over withheld bonus payments due

Guma, Kaplan caused Natbony to terminate Guma as Chief Executive Officer of Leor.

      17.     Guma subsequently filed a lawsuit on December 30, 2008, in Texas state court

against Pardus LLC—a Thomas Kaplan-owned entity with an equity interest in Leor—and

against Natbony, as trustee of the Trusts.  Natbony was sued for an accounting of the Trusts

based upon his refusal to provide Guma any information regarding the management of the Trusts

(which at the time held the proceeds from the sale of Leor), and Pardus was sued for breach of

contract and breach of fiduciary duty for its failure to pay Guma over $17 million in bonus

payments.[4]  The complaint sought compensatory damages and an accounting.

      18.     Not satisfied with litigating this dispute directly with his nephew, on December

15, 2008, Kaplan threatened his sister, plaintiff Aguiar, who was then attempting to mediate the

dispute between her brother and her son, telling her that if Guma took any further action

---

one f the most important domestic discoveries in recent memory.  In 2005, under Mr. Aguiar's
executive management, Leor successfully engineered the series of financings which fully
capitalized the projects in the company's portfolio.

Guma was also chosen as CEO of the Year in February 2008 in the Oil and Gas Investor publication.
[4] The Texas case was dismissed on September 11, 2009, and the claims refiled in an action pending in the United
States District Court for the Southern District of Florida, *Guma Aguiar v. William Natbony, Thomas Kaplan, and
Katten Muchin Rosenman LLP*, Case No. 09-60683 (S.D. Fla.)  Leor brought a separate action against Guma Aguiar
which is also pending in the Southern District of Florida: *Leor Exploration & Production LLC, Pardus Petroleum
L.P., et al. v. Guma Aguiar*, Case No. 09-60136-CIV-Seitz/O'Sullivan (S.D. Fla.).  On June 29, 2010, Magistrate
Judge O'Sullivan issued a report and recommendation that the claims be dismissed as a sanction against Guma. *See
Leor v. Aguiar, et al.*, 2010 WL 2605087 (S.D. Fla. June 29, 2010).  As part of the dispute between Guma and
Kaplan, there was also a case filed in Florida Circuit Court: *Thomas Kaplan v. Guma Aguiar and The Lillian Jean
Kaplan Foundation, Inc.*, Case No. 09-001509 (Fla. Cir. Ct., 17th Jud. Cir).

concerning the Trusts or pursued a claim relating to the proceeds from the sale of Leor, Kaplan

would do everything in his power to destroy Guma's reputation, including by taking action

against Guma's family, including his mother, plaintiff Aguiar:

> "I can't stress this enough (as it will surely affect you [plaintiff Aguiar] too)...when it comes to your allusions of "floods", be advised that whatever legal war Guma starts, others will finish. The offensive that is launched will be across the broadest front imaginable.  In presenting the various cases, Guma's reputation will be destroyed, utterly and thoroughly."

(*See* Exhibit 1, December 15, 2008 e-mail from Thomas Kaplan to Ellen Aguiar.)

19.     After Guma persisted with his claims and with the litigation, Kaplan made good

on his threat and "launched" the promised offensive, not only against Guma, but against his

family.  This included the filing by Leor, at the direction of Kaplan and Natbony, of meritless

litigation against Guma's sister, Angelika Aguiar (another beneficiary), and his brother-in-law,

Justin Corey Drew, claiming that they had defrauded Leor while employed by that company.

Kaplan and Natbony caused Leor to abruptly dismiss the lawsuit without explanation within a

week after their depositions were taken.  The sudden abandonment of the lawsuit speaks for itself

– the lawsuit was vexatious and brought only to retaliate against the Aguiars.

### C.     Natbony's Breach of Fiduciary Duty.

20.     The Trusts are irrevocable GRATS. For example, the Dafna GRAT provides that:

"Except as hereinbefore specifically provided and except as otherwise provided by law, (1) the

Trusts may not be terminated or revoked in whole or in part at any time in any manner

whatever..."   Because the Trusts are *irrevocable*, the Settlors gave up all right, except as

specifically provided for in the Trusts and otherwise permissible under applicable law, to manage

or administer the Trusts, including by controlling or dictating the actions of the trustee.  The

Trusts thus prohibited the Kaplans from controlling in any way the actions of the trustee.

7

Accordingly, it was improper for the Kaplans to direct or influence Natbony's administration of the Trusts and treatment of plaintiff Aguiar and her issue and Natbony acted in bad faith by allowing them to do so.

21.     Irrespective of the powers granted to Natbony under the Trusts, he still was subject to an unwavering duty of undivided loyalty to the trust beneficiaries and was thus required to exercise reasonable care, diligence and prudence with respect to plaintiff Aguiar. Natbony abused his discretion and acted in bad faith in violating his fiduciary duties to plaintiff Aguiar.  Plaintiff is entitled to a court order removing Natbony as trustee and a decree invalidating the January 7, 2009 Amendments which removed plaintiff as a beneficiary.

**D.     Natbony's Subservience to Kaplan and Conflict of Interest.**

22.     Despite his obligation to be a disinterested trustee, Natbony was anything but a truly disinterested trustee.  Indeed, Natbony depends on Kaplan for his livelihood, a conflict of interest that caused him to abuse his discretion, to breach his fiduciary duties, and to act in bad faith.

23.     Not only was Natbony not a disinterested trustee, he also was a "subordinate" of Kaplan within the meaning Internal Revenue Code Section 672.  Consequently, Natbony is presumed to be subservient to Kaplan in the exercise (or non-exercise) of his duties as trustee.

24.     Natbony's financial dependence on Kaplan is clear.  In May 2007, Natbony stepped down as partner at Katten Muchin and began working exclusively for Kaplan and his companies.  Kaplan appointed defendant Natbony the CEO of his company Tigris.  In addition to a salary as CEO of Tigris and as trustee of the Trusts, Natbony received payments from Pardus LLC, a minority owner of Leor, including a payment of 2.75 million dollars.  In 2008, Natbony received a payment of 3.5 million dollars from Jaguar-Portland Holdings, another Kaplan related

entity. Natbony's positions and holdings in the various companies owned and/or controlled by Kaplan created an irreconcilable conflict of interest for Natbony, and caused him to abuse his discretion and act in bad faith and otherwise interfered with his proper administration of the Trusts.

### E.    The Kaplans' Wrongful Conduct.

25.    Kaplan and his wife knowingly and improperly caused Natbony's conflict of interest and used this power to induce and participate in Natbony's wrongful conduct, including his breaches of fiduciary duty. The Kaplans knew that they controlled Natbony's actions as trustee due to Natbony's dependence on them for his livelihood. The Kaplans also knew that whenever they directed him to act in breach of his fiduciary duty, Natbony's conflict would cause him to comply. The Kaplans, with Natbony's consent and participation, essentially managed the Trusts, investing and using the assets of the Trusts for their own benefit.

26.    For example, at the direction of the Kaplans, and in order to favor them to the detriment of the other beneficiaries, in 2006 and 2007 Natbony made elections pursuant to Estate Powers and Trust Laws of the State of New York Section 11-2.4 (the "Unitrust Election"). These elections allowed Natbony to make larger distributions to the Kaplans, as Settlors of the Trusts, than were provided for when the Trusts were created. Essentially the Unitrust Election defined the annual income of each Trust as four percent (4%) of such Trust's value (calculated annually) without regard to the traditional definition of income. Thus, for example, because the initial value of Danfa's Trust was $5,000,000.00, prior to the election, the amount of income available for Natbony to distribute to Dafna annually after the payment of the annuity amount

would be minimal compared to the over $30,000,000 of income available to Natbony to distribute to Dafna after the election.[5]

27.     In order to mislead plaintiff Aguiar about the implications of the Unitrust Election, Natbony sent her (and her issue) a one-page letter and a separate Consent and requested that she execute the Consent to the Unitrust Elections.  The letter failed to fully advise plaintiff Aguiar about the consequences of the Election.  In an effort by Natbony to avoid seeking the Court's appointment of guardians to protect the interests of the minor and unborn children who were beneficiaries of the Trusts, the letter and the Consent further requested that plaintiff Aguiar sign on behalf of her minor children.

28.     Natbony abused his discretion and acted in bad faith by making the Unitrust Elections, by failing to provide plaintiff Aguiar with full and appropriate information concerning the election, by failing to advise plaintiff Aguiar to seek independent counsel and by failing to ask the Court to appoint guardians for plaintiff Aguiar's minor issue.  If plaintiff Aguiar had known the consequences of the Unitrust Election (Natbony never rendered any accounting or provided any other financial information), she would not have consented to the Unitrust Elections.

29.     Natbony, with the Kaplan's knowing direction and participation, further violated his duties to the beneficiaries because, rather than exercising his discretion in making investments that would be in the best interest of the Trusts and their beneficiaries, Natbony made investments that were directed by, and for the benefit of, the Kaplans while damaging the interests of the other beneficiaries, including plaintiff Aguiar.

---

[5] Natbony as trustee represented to the New York Surrogate Court in 2006/2007 that the Dafna Trust was worth approximately $800,000,000.00.

30.     Natbony allowed the Kaplans to dictate the activities of the Trusts.  For example, the Kaplans directed Natbony to purchase real property that benefited the Kaplans and their interests, and Natbony did so without regard to whether the investments were sound or productive.  Natbony, at the direction of Kaplan, purchased non-income-earning land in the Brazilian Pantanal for charitable use by Kaplan's Panthera Project.  In addition, at Kaplan's direction, Natbony caused the Trusts to purchase millions of dollars worth of art to be used, among other things, for Kaplan's personal use and aggrandizement.  Dafna Kaplan also directed charitable donations to be made out of the Trusts to satisfy her personal charitable commitments. Natbony's actions were not based on an exercise of his independent discretion as disinterested trustee but, rather, were instead taken upon the direction of the Kaplans.  These investments at the Kaplans' direction were in violation of Natbony's fiduciary duty to conserve the assets of the Trusts, and resulted in the dissipation of Trust assets.

31.     In addition to his breaches of duty, abuses of discretion and bad faith toward plaintiff Aguiar, Natbony's open hostility toward them is evidenced by his use of his other positions with Kaplan and his companies to fight Kaplan's dispute against Guma.  For example, as discussed above, Natbony (at Kaplan's direction) caused Leor to file a specious spite suit against plaintiff Aguiar's daughter, Angelika Aguiar (another beneficiary of the Trusts), and her husband for improper purposes of harassment and retaliation.

## CAUSES OF ACTION

### Count I
### (Breach of Fiduciary Duty – Removal of Plaintiff
### Aguiar and Her Issue as Beneficiaries)

32.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 - 31.

33.     As trustee of the Trusts, Natbony has a fiduciary obligation to the plaintiff who was (and still should be) a beneficiary of the Trusts.  His duty was to serve as a neutral and disinterested trustee.

34.     Natbony abused his discretion as a trustee, he did not exercise reasonable care, diligence or prudence, and he acted in bad faith by allowing the Kaplans, to effectively manage the Trusts.

35.     To the extent that the Trusts provide discretion to the trustee to make determinations, the trustee is required to make an independent decision in good faith, to recuse himself or seek instructions from the court, where as here, he has a conflict of interest, and with full regard to the fiduciary duty that he owes all the beneficiaries of the Trusts.

36.     Natbony did not exercise his discretion independently and in good faith.  Instead, as a result of the Kaplans' influence and control over him, he improperly removed plaintiff and her issue as a contingent beneficiary of the Trusts.  Plaintiff Aguiar was damaged by Natbony's abuses of discretion, breach of fiduciary duty and bad faith stemming from her removal as a beneficiary of the Trusts.  As a result of Natbony's failure to exercise independent judgment and his abuse of discretion, bad faith, conflicts, and failure to exercise reasonable care, diligence and prudence, the January 7, 2009 Amendments to the Thomas and Dafna Kaplan Trusts should be deemed invalid and/or null and void and/or rescinded.

## Count II
### (Breach of Fiduciary Duty – Bad Faith Use of Trust Assets)

37.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 - 36 and count I.

38.     As trustee of the Trusts, Natbony has a fiduciary obligation to the plaintiff who was (and still should be) a beneficiary of the Trusts.

12

39.      As trustee, Natbony was required to exercise his fiduciary duties in managing the

Trusts' assets.  Natbony owed the Trusts beneficiaries a duty of reasonable care, diligence and

prudence in the administration of the Trusts.  Natbony failed to exercise reasonable care,

diligence or prudence and abused his discretion and acted in bad faith in connection with

protecting the Trusts' assets.

40.      Natbony abused his discretion and his fiduciary duty of reasonable care, good

faith, diligence and prudence by allowing the Kaplans to determine the investments and

otherwise manage the Trusts and by making investments that were not in the best financial

interests of the Trusts.  Natbony further breached his fiduciary duty and dissipated trust assets by

allowing the Kaplans to use the assets of the Trusts for their own personal benefit, to the

detriment of the other beneficiaries of the Trusts.  He breached his fiduciary duties and abused

his discretion by, among other things, purchasing millions of dollars in art at the direction of

Thomas Kaplan for his personal use.  The art purchases were for an improper purpose and were

unproductive investments that damaged the Trusts and the beneficiaries.  In addition, Natbony

abused his discretion and acted in bad faith by taking direction from Thomas Kaplan to purchase

real estate, including unproductive land in the Pantanal for use in Thomas Kaplan's charitable

Panthera Project.

41.      As a result of Natbony's abuses of discretion and bad faith in handling the Trusts'

assets, plaintiff Aguiar was damaged because, upon information and belief, the Trusts' assets

have been significantly dissipated or put at risk.  Therefore, the trustee should be surcharged for

the losses to the Trusts with statutory interest as a result of his mismanagement and the trustee

should be directed to provide a full and complete accounting of the financial condition and

management of the Trusts.

## Count III
### (Breach of Fiduciary Duty – Unitrust Election)

42.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 - 41 and Counts I and II.

43.    As trustee of the Trusts, Natbony has a fiduciary obligation to the plaintiff who was (and still should be) a beneficiary of the Trusts.

44.    Natbony breached his duty of loyalty, good faith and reasonable care, diligence and prudence by misleading plaintiff Aguiar as to the effect of the Unitrust Elections and/or failing to fully inform plaintiff Aguiar of the details of the Unitrust Elections including failing to disclose the enormous magnitude of the increase in the amount that Natbony was entitled to distribute from the Trusts to Thomas and Dafna Kaplan and consequent decrease in the amount available for distribution to the beneficiaries after the Annuity Term.

45.    Natbony failed to fully inform the beneficiaries of their rights related to the Unitrust Election which affected both Trusts and indeed, intentionally concealed from the beneficiaries the facts necessary for plaintiff Aguiar to make an informed decision.

46.    With respect to the Thomas Trust, Natbony failed to seek the Unitrust Election within the two year period allowed by law.  Therefore, Natbony was required to obtain the consent of all beneficiaries and the consent had to be informed.

47.    Natbony failed to make any effort to provide a complete explanation of the Unitrust Elections to plaintiff Aguiar and instead simply mailed a scant one-page letter that made no mention of the significant financial impact of the Unitrust Elections and directed plaintiff Aguiar to sign and return the Consent included with the letter.

48.    Had plaintiff Aguiar been fully informed of her legal rights with respect to the Unitrust Elections she never would have executed the Consent.  The Trusts, and plaintiff, have

14

been damaged by Natbony's failure to properly exercise his fiduciary duties with respect to plaintiff in connection with the Unitrust Elections.

49.     Natbony also failed to ask the court to appoint guardians for the minor children among plaintiff Aguiar and her issue when making the Unitrust Elections.

50.     Natbony abused his discretion intentionally, in bad faith and with reckless disregard made the Unitrust Elections.  Although he had (and still has) a conflict, Natbony took such action at the direction of Thomas and Dafna Kaplan, the Settlors of the Trusts.

51.     The Trusts, and plaintiff, were damaged by these fiduciary breaches in that the principal of the Trusts has been dramatically reduced by the increased payments to the Kaplans.

52.     As a result of Natbony's numerous breaches, the court should render the Unitrust Elections invalid and/or null and void and/or rescinded and the trustee should be surcharged with statutory interest for any additional payments Natbony made to the Settlors on account of the Unitrust Elections.

## Count IV
### (Aiding and Abetting Breach of Fiduciary Duty Against the Kaplan Defendants)

53.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 - 52 and Counts I - III.

54.     As trustee of the Trusts, Natbony has a fiduciary obligation to the plaintiff who was (and still should be) a beneficiary of the Trusts.

55.     Natbony abused his discretion, breached his duties to plaintiff Aguiar and her issue, including his fiduciary duty of undivided loyalty, good faith, reasonable care, diligence and prudence and acted in bad faith by allowing the Kaplans to influence the trustee's actions and effectively manage the Trusts.  Specifically, Natbony wrongfully removed plaintiff Aguiar and her issue as beneficiaries of the Trusts, acquired property for the benefit of the Kaplans and

to the detriment of the other beneficiaries, and by made a Unitrust Elections at the direction of the Settlors and without proper notice or informed consent.

56.     The Kaplans knowingly induced Natbony to breach his fiduciary duty towards plaintiff and the Trusts and aided and abetted such breaches.  The Kaplans knew that Natbony owed a fiduciary duty to the beneficiaries, including plaintiff Aguiar, yet they nevertheless used their improper influence over Natbony to control the activities of the Trusts.

57.     The Kaplans made an irrevocable gift of the Schedule A property to the Trusts and thereafter, relinquished any legal interest in or right to control the Trust assets; yet, in violation of the terms of the Trusts and the Internal Revenue Code, and New York law the Kaplans induced Natbony to abuse his discretion, act in bad faith, and breach his fiduciary duties to plaintiff by allowing the Kaplans to continue to control the Trusts for their personal benefit.

58.     Plaintiff Aguiar suffered damages as a result of the Kaplans' aiding and abetting Natbony to abuse his discretion, act in bad faith, and breach his fiduciary duty in that plaintiff Aguiar was wrongfully removed as a beneficiary of the Trusts and the principal of the Trusts have been significantly dissipated as a result of the Kaplans' wrongful acts.

59.     As a result of the Kaplans' aiding and abetting, they should be directed to pay the Trusts for the losses to the Trusts with statutory interest, and the January 7, 2009 Amendments should be deemed invalid and/or null and void and/or rescinded.

## Count V
### (Declaratory Relief)

60.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 - 59 and counts I - IV.

61.     Plaintiff Aguiar seeks a judicial declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57, that the January 7, 2009

Amendments to the Trusts removing plaintiff Aguiar and her issue as beneficiaries are invalid and void.

62.     Natbony as the trustee of the Trusts, violated, and continues to violate, his fiduciary duties and acted (and continues to act) with a conflict of interest under the influence of the Settlors Thomas and Dafna Kaplan.  Natbony's removal of plaintiff Aguiar and her issue was an improper abuse of his discretion and was done in bad faith.

63.     An actual controversy exists between plaintiff Aguiar, who contends that her status as a beneficiary has been wrongfully and improperly terminated, that she should be reinstated as a beneficiary of the Trusts and that the January 7, 2009 Amendments should be deemed invalid, and/or null and void and/or rescinded, and the defendants, whose interests are adverse as to the January 7, 2009 Amendments to the Trusts.

64.     Plaintiff Aguiar has no adequate remedy at law.

65.     There is a bona fide, actual, present and practical need for a declaration with respect to the validity of the January 7, 2009 Amendments to the Trusts and whether it should be deemed void and/or rescinded by this Court.

66.     The Court is authorized to grant declaratory relief requested herein pursuant to the Declaratory Judgment Act 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.

67.     Pursuant to the Declaratory Judgment Act 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, plaintiff Aguiar is entitled to a judicial declaration that the January 7, 2009 Amendments to the Trusts are invalid and/or null and void and/or rescinded.

### Count VI
### (Appointment of an Interim Independent Co-Trustee)

68.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 - 67 and counts I - V.

69.     Natbony has violated the terms of the Trusts and has repeatedly violated his duties to plaintiff Aguiar and her issue as beneficiaries of the Trusts, including by improperly removing them from that capacity.  He has also abused his discretion and acted in bad faith by taking actions in contravention of the terms of the Trusts.  Natbony has not been a disinterested trustee and has acted with a clear conflict of interest as a result of his dependence on Kaplan.  In fact, Natbony is a "subordinate" unable to make discretionary determinations as trustee within the terms of the Trusts.

70.     Natbony's breaches are on-going in that he continues to act as trustee under the influence of the Kaplans and in reckless disregard of the interests of plaintiff Aguiar and her issue and of the other beneficiaries (except the Kaplans).  The harm to the wrongfully removed beneficiaries is ongoing and Natbony continues to abuse his discretion and act in bad faith. Natbony is unsuitable and unfit to execute the Trusts.

71.     Natbony's personal interests conflict with his duties as trustee, and he has repeatedly acted under the influence of the Kaplans and in total disregard of the plaintiff's interests when the Kaplans' directions conflict with those of the beneficiaries of the Trusts.

72.     There is good cause to remove Natbony as the trustee and to appoint a non-conflicted trustee unaffiliated with the Kaplan family (including their counsel at Katten Muchin). In the interim, while this litigation is pending, the Court should appoint a non-conflicted interim co-trustee to ensure that Natbony does not further abuse his discretion and act in bad faith during the course of this litigation.

73.     The appointment of a co-trustee will be conducive to facilitating proper administration of the Trusts during the course of this litigation.

74.     Alternatively, this Court should issue a preliminary injunction freezing the activity of the Trusts during the course of this litigation to prevent further depletion of the Trusts' assets and/or requiring that the trustee seek the permission of the Court before making any further investments or changes in the trust assets.  Natbony has repeatedly breached his fiduciary duties as set forth herein and has a conflict between his duties as an independent trustee and his financial reliance on the Kaplans.  Accordingly, plaintiff is likely to succeed on the merits of her claim.

75.     A preliminary injunction is required to preserve the assets of the Trust and to prevent waste during the pendency of this action.  Plaintiffs are likely to prevail on the merits, and this case presents serious questions going to the merits to make them a fair ground for litigation issues on the merits.

76.     Plaintiff will be irreparably harmed if the court denies the preliminary injunction or alternative relief of the appointment of a co-trustee because the trustee and the Kaplans continue to dissipate Trust assets, and the trustee is not in a financial position to return the substantial amounts that the Trusts are losing.  The balance of hardships is in plaintiff's favor.

## Count VII
### (Removal of Trustee, Successor Trustee and Any Kaplan Family Member As Trustee)

77.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 - 76 and counts I - VI.

78.     The Dafna Trust provides that Natbony will be the trustee and if he ceases to act as trustee, then Robert E. Friedman of Katten Muchin is the successor trustee along with an individual among Thomas Kaplan's issue.

79.     Not only is Natbony unsuitable to be a trustee based on his various breaches of fiduciary duty, and his conflicts of interest, but the successor trustee Robert Friedman is also

unsuitable along with any other attorney from the Katten Muchin law firm.  Robert Friedman participated directly with Natbony on issues relating to these Trusts.  In addition, in making decisions relating to the Trusts, Natbony claims to have relied on the lawyers at Katten Muchin where he was a partner and the firm that handled all of Thomas and Dafna Kaplan's legal work.  As such, Robert Friedman and the Katten firm are tainted and should not be allowed to act as co-trustees or as successor trustees.

80.    The Dafna Trust also provides for the appointment of Kaplan family members as a co-trustee or as a successor trustee.  Kaplan and his family members could not serve as non-conflicted and independent trustees here, where Kaplan and his wife have already demonstrated that they will not treat beneficiaries fairly in an unbiased fashion.

81.    A non-conflicted court appointed trustee is necessary in order to ensure that the trustee will abide by the terms of the Trusts.

## **PRAYER FOR RELIEF**

**WHEREFORE,** plaintiff Aguiar requests that this Court enter judgment in her favor and grant the following relief:

a)    Judgment in favor of plaintiff Aguiar finding that Natbony breached his fiduciary duty and a ruling that Natbony's January 7, 2009 Amendments to the Trusts removing plaintiff Aguiar as a beneficiary are invalid and/or null and void and/or rescinded.

b)    Judgment in favor of plaintiff Aguiar finding that Natbony abused his discretion, breached his duties of reasonable care, diligence and prudence and acted in bad faith by making the Unitrust Elections and surcharging Natbony for all payments to the Settlors on account of the Unitrust Elections with statutory interest.

20

c)  Judgment in favor of plaintiff Aguiar finding that Natbony abused his discretion, breached his duties of reasonable care, diligence and prudence and acted in bad faith in handling the trust assets and surcharging Natbony for all trust fund losses with statutory interest and all trustee payments made to Natbony.

d)  Judgment in favor of plaintiff Aguiar finding that the Settlors, Thomas and Dafna Kaplan, aided and abetted Natbony's breaches of fiduciary duty and holding them liable for payment of the Trusts' fund losses with statutory interest.

e)  A declaration that the January 7, 2009 Amendments to the Trusts are invalid and/or null and void and/or rescinded.

f)  Appointment of an interim non-conflicted co-trustee during the course of the litigation and/or issuance of a preliminary injunction freezing the activity of the Trusts during the course of this litigation or requiring that leave of the court be obtained before any changes are made to the assets of the Trusts.

g)  Judgment in favor of plaintiff Aguiar for the removal of Natbony as trustee, and a decree preventing Robert Friedman from serving as successor trustee and a declaration that no member of the Settlors family and/or Natbony can serve as a trustee of the Trusts because any such persons would be conflicted and improper and an order appointing a non-conflicted trustee in their place and stead.

h)  Judgment directing that the defendant Natbony provide a full and complete accounting of the financial condition and management of the Trusts.

i)  Judgment in favor of plaintiff Aguiar for all attorneys' fees and costs associated with this action to be paid from the Trusts during the course of this litigation.

j)  Such other and further relief as the Court deems proper.

21

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial of all issues so triable.

Dated:  September 2, 2010                    Respectfully submitted,

                                             BOIES, SCHILLER & FLEXNER LLP

                                             By: _____
                                                 Howard Vickery, Esq.
                                                 hvickery@bsfllp.com
                                                 575 Lexington Avenue, 7th Floor
                                                 New York, NY  10022
                                                 Telephone: (212) 446-2300
                                                 Facsimile: (212) 446-2350

                                                 Carlos M. Sires, Esq. (*Pro Hac* pending)
                                                 Sigrid S. McCawley, Esq. (*Pro Hac* pending)
                                                 401 East Las Olas Boulevard, Suite 1200
                                                 Fort Lauderdale, Florida  33301
                                                 Telephone: (954) 356-0011
                                                 Facsimile: (954) 356-0022

                                                 *Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ELLEN AGUIAR,

                            Plaintiff,

             v.

WILLIAM NATBONY, individually and as
Trustee of the THOMAS S. KAPLAN 2004
QUALIFIED TEN YEAR ANNUITY TRUST
AGREEMENT and the DAFNA KAPLAN 2003
EIGHT YEAR ANNUITY TRUST
AGREEMENT, THOMAS KAPLAN and
DAFNA KAPLAN,

                           Defendant.

------------------------------------------------------------X

10 Civ. 6531 (PGG)

COMPLAINT
EXHIBIT 1

**From:** kaplan600@aol.com [mailto:kaplan600@aol.com]
**Sent:** Monday, December 15, 2008 8:37 AM
**To:** Bill Natbony
**Subject:** Fw: Hey Tommy


Sent via BlackBerry by AT&T

---

**From:** kaplan600@aol.com
**Date:** Mon, 15 Dec 2008 13:36:10 +0000
**To:** Ellen<ellenag112@aol.com>
**Subject:** Re: Hey Tommy
Dear Ellen,

Guma has Leib's number. Feel free to speak to Leib and you'll get the whole story...which encompasses Reuven Feinstein as well. You may be surprised.

I have no interest in disputing whether or not any of the charities with whom Guma has interacted are meritorious. In the interest of amity and conflict resolution, I asked Leib the one relevant question: how much of Guma's donations were EJF-related, so that those sums could be reimbursed to my nephew. He told me that, other than $350k (he was unsure about another $500k), the sums in question had no relation to me or to EJF, but rather were following a separate agenda. The authority you refer to having been vested in Guma to build up EJF was never given by me. It couldn't have been...as Guma insisted to Leib that I should not know of his activities. Had I approved of what he was doing, we'd have no issue. I will not, however, consider his unilateral initiatives to be something that others should pay for.

As to nightmarish scenarios ...if you think that threats will work with me, you clearly don't know me. Do not make the mistake as others have - to their sincere regret - in interpreting my forbearance as weakness. It is not. It is my strength that I give people a chance to climb down from untenable positions, so that everyone can get about their lives in peace. Guma knows this.

I have, however, been on the receiving end of threats and lies from Guma long enough. And your letter is the final straw. You should know that, contrary to any legal advice you may have heard, the vulnerable parties in litigation aren't the people in New York. Everything related to Guma is terribly exposed — his lawyers are aware of some (but far from all) of the exposures, and you should ask them. (And please don't believe Jay's advice; he has lost more lawsuits than anyone we know...and has more legal judgments against him than anyone since Nuremburg.) I can't stress this enough (as it will surely affect you too)... when it comes to your allusions of "floods", be advised that whatever legal war Guma starts, others will finish. The offensive that is launched will be across the broadest front imaginable. In presenting the various cases, Guma's reputation will be destroyed, utterly and thoroughly. I have never wanted that for him, as evidenced by the tactful way I have tried to explain our separation to those who aren't a party to our issues.

TK-LJK0196

Indeed, up to this point, there has been no desire to use what you once referred to in a previous letter as "leverage" in arriving at a complete parting of the ways between Guma and myself. Because we are still family, Bill has refrained from using such leverage.

In light of this letter, I would say that it is now my patience which is wearing thin. Guma has tugged at the tiger's tail once too often. I have awakened to a new reality. Before I was sentimentally wedded to a peaceful outcome. Perhaps this was because I harboured a belief that, while it was predictable and understandable that you'd take your son's side, your filial loyalty would keep you as an honest broker. As of this past Thanksgiving, you've abandoned that role.

Guma knows me well: My first offer is always my best. The first offer remains on the table. It is most generous to him, more so than to anyone else. While his demands to conscript me into his own religious agenda are rejected, the reasons for such are matters of principle rather than financial. Having said that, the demands Guma presents are counter-productive... and, as Rabbis Feinstein and Tropper will attest, they are based on falsehoods.

Nonetheless, Bill has spoken with Paul and confirmed that the offer which has been on the table since the Summer remains on the table -- take it or leave it. If you all take it, fine. If you leave it, that too is fine. One thing's certain: At this point, I no longer care and, as of today, Bill is fully aware that he can do whatever he feels is his fiduciary responsibility without any reference to any prior recommendations on my part. Enough's enough.

And yes...love to all...

Tommy

Sent via BlackBerry by AT&T

---

From: EllenAg112@aol.com
Date: Fri, 12 Dec 2008 21:17:56 EST
To: <Kaplan600@aol.com>
Subject: Hey Tommy

I have given a lot of thought to our conversation, particularly the segment regarding the EJF related donations-our big obstacle in resolving anything and it appears our discrepancy won't go away.

Going to the EJF website, it is undeniable that Rabbis Kook and Feinstein are as ubiquitous as Leib. It's appears to me that Guma did not make such a random call by donating to charities affiliated with these men, diversifying the EJF portfolio as it were. In fact, the only presence that's missed on the website is that of Guma, who I guess was a major supporter, until given the boot, but now paraphrasing you, should just suck up 7.1 M and consider it storing up treasure in heaven!

This doesn't resonate with me, all things considered. After walking away with 90 % of Leor, I would think that any of these issues would be too petty to be taken seriously...

I'd appreciate that follow up call to Leib we discussed, confirming that he doesn't consider Guma's choice of charities to have been an appropriate one. I imagine it might surprise these Rabbis to know they don't have THAT much credibility!

I'd like to bring Leib and Amy Zolar into the picture to confirm that Guma's actions were that of an egomaniacal renegade, as opposed to a good steward who has made very wise and prudent investments in both earthly and spiritual realms and was given the authority to build up EJF with 15M of related charitable allocations, which he did...

Please let me know their findings or perhaps they'd like to speak to me directly:

TK-LJK0197

954-328-1219.
It is absolutely in EVERYONE'S best interest to find a peaceful and
honorable resolution, before there's no turning back and the situation takes on a
nightmarish life of it's own. It's so sad that after being so successful together that you
can no longer be in the same room..on the same team and perhaps ultimately not even
on the same planet.
You commented on how smart you are, but Guma is also a very quick study and you're
right, I as a mother, have always been concerned with protecting my children and
nothing about that has changed. It's ironic that YOU would be making that comment to
ME!
But not as ironic that after the creation of such enormous wealth-billions and billions,
that the little family we had in tact would be obliterated by a few million given to
charity!!!!
And so Terror Alliance, let's see if there's a last minute epiphany to hold back the
flood...
Waiting to know, love to all-Ellen

Make your life easier with all your friends, email, and favorite sites in one place. Try it now.

Unless expressly stated otherwise, this message is confidential and may be privileged or otherwise protected from disclosure. It is intended
for the addressee(s) only. Access to this e-mail by any other person is unauthorized. If you are not an addressee, any disclosure,
dissemination, distribution or copying of the contents of this e-mail or the information herein or any action taken (or not taken) in reliance on it
is unauthorized and may be unlawful. If you are not an addressee or have received this e-mail in error, please immediately inform the sender,
delete this message from all mailboxes, empty this e-mail from your trash, and destroy all copies.

This communication is for informational purposes only. It is not intended as an offer or commitment for any transaction, except as otherwise
expressly stated therein. All business terms and conditions, data and other information are not warranted as to completeness or accuracy
and are subject to change without notice. Any comments or statements made herein do not necessarily reflect those of Tigris Financial
Group Ltd., its affiliates, principals or related persons.

Unless expressly stated otherwise, this message is confidential and may be privileged or otherwise protected from disclosure. It is intended
for the addressee(s) only. Access to this e-mail by any other person is unauthorized. If you are not an addressee, any disclosure,
dissemination, distribution or copying of the contents of this e-mail or the information herein or any action taken (or not taken) in reliance on
it is unauthorized and may be unlawful. If you are not an addressee or have received this e-mail in error, please immediately inform the
sender, delete this message from all mailboxes, empty this e-mail from your trash, and destroy all copies.

This communication is for informational purposes only. It is not intended as an offer or commitment for any transaction, except as otherwise
expressly stated therein. All business terms and conditions, data and other information are not warranted as to completeness or accuracy
and are subject to change without notice. Any comments or statements made herein do not necessarily reflect those of Tigris Financial
Group Ltd., its affiliates, principals or related persons.

TK-LJK0198