UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELLEN AGUIAR,

                     Plaintiff,

        - against -

WILLIAM NATBONY, individually and as
trustee of the THOMAS S. KAPLAN 2004
QUALIFIED TEN YEAR ANNUITY
TRUST AGREEMENT and the DAFNA
KAPLAN 2003 EIGHT YEAR ANNUITY
TRUST AGREEMENT, THOMAS
KAPLAN, and DAFNA KAPLAN,

                     Defendants.

**MEMORANDUM OPINION
& ORDER**

10 Civ. 6531 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        This is a suit for breach of fiduciary duty.  Plaintiff Ellen Aguiar alleges that the

trustee of two irrevocable Grantor Retained Annuity Trusts breached his fiduciary duty by failing

to exercise independent judgment and not acting as a neutral and disinterested trustee.  As a

result, the trusts' assets were allegedly diminished and Aguiar was removed as beneficiary.

        Defendants have moved to transfer, to dismiss, or to stay the case.  For the

reasons stated below, Defendants' motion to transfer this action to the Southern District of

Florida will be granted, and Defendants' remaining motions will be denied as moot.

**BACKGROUND**

        Plaintiff is the mother of Guma Aguiar ("Guma") and is a resident of Florida.

(Cmplt. ¶¶ 1, 4)  Guma is a party to several lawsuits in Florida involving Thomas Kaplan

("Kaplan"), who is Guma's uncle and Plaintiff's brother.  (Id.; see Leor Exploration &

Production LLC, et al. v. Guma Aguiar, Case No. 09-60136-CIV-Seitz/O'Sullivan (S.D. Fla.);

Guma Aguiar v. William Natbony, Thomas Kaplan, Katten Muchin Rosenman LLP, and Pardus

Petroleum, LP, Case No. 09-60683-CIV-Seitz/O'Sullivan (S.D. Fla.); Thomas Kaplan v. Guma

Aguiar and The Lillian Jean Kaplan Foundation, Case No. 09-001509 CA (07) (Fla. Cir. Ct. 17th

Jud. Cir.))  According to the Complaint, the present suit

> arises from actions taken by defendant Thomas Kaplan ("Kaplan") as a result of a
> bitter business dispute with his nephew, Guma Aguiar ("Guma"), a non-party to
> this action.  As a result of this business dispute with Guma, Kaplan launched what
> he termed an "offensive" across "the broadest front imaginable" which included
> the wrongful acts against plaintiff Aguiar – Kaplan's sister and Guma's mother –
> that give rise to this action.

(Cmplt. ¶ 1)

In 2003, Kaplan and Guma founded Leor Exploration and Production LLC, an oil

and gas company, and Guma became CEO of Leor.  (Cmplt. ¶ 16)  In 2007, Leor sold its assets

for $2.55 billion.  (Id. ¶ 11)  Almost all of these proceeds were placed in two irrevocable Grantor

Retained Annuity Trusts ("GRATs") that had been formed several years earlier:  the Thomas S.

Kaplan 2004 Qualified Ten Year Grantor Retained Annuity Trust Agreement (the "Thomas

Trust") and the Dafna Kaplan 2003 Eight Year Grantor Retained Annuity Trust Agreement (the

"Dafna Trust").  (Id.)  Plaintiff and her issue were named beneficiaries of the Thomas Trust and

remainder beneficiaries of the Dafna Trust.  (Id. ¶¶ 13, 14)  Plaintiff was entitled to receive

income and principal after the expiration of the original trust terms, which would occur in 2014

for the Thomas Trust and 2011 for the Dafna Trust, and during the lifetimes of Kaplan or his

wife, Dafna.  (Id.)  William Natbony is the trustee of the Trusts, and allegedly "derives all or

substantially all of his income from entities controlled or owned by Kaplan."  (Id. ¶ 15)  The

Trusts obligate Natbony to be a disinterested trustee and prohibit Kaplan and his wife from

controlling the actions of the trustee.  (Id. ¶¶ 20, 21)

After Leor was sold in 2007, Kaplan and Guma could not reach agreement as to

how the proceeds of the sale should be divided, and this dispute resulted in Guma's termination

as CEO.  (<u>Id.</u> ¶ 16)  Guma then filed a lawsuit in Texas state court against Pardus LLP, an entity

owned by Kaplan that had an equity interest in Leor, and against Natbony as trustee of the

Trusts.[1]  (<u>Id.</u> ¶ 17)  In response, Kaplan allegedly threatened to damage Guma's reputation if

Guma further pursued the litigation, "including by taking action against Guma's family,

including his mother, plaintiff Aguiar."  (<u>Id.</u> ¶ 18)  Leor then filed a suit alleging that Guma's

sister (a beneficiary of the Trusts) and brother-in-law defrauded Leor while employed by the

company.  (<u>Id.</u> ¶ 19; <u>see</u> <u>Leor Exploration & Production LLC v. Angelika Aguiar, et al.</u>, Case No.

09-014890 CACE (12))  Plaintiff and her issue were removed as beneficiaries of the Trusts by

January 7, 2009 amendments to the Trusts.  (<u>Id.</u> ¶ 3)

        Plaintiff claims that Natbony is financially dependent on the Kaplans (<u>id.</u> ¶ 15),

and that – acting at the Kaplans' volition – Natbony abused his discretion, breached his fiduciary

duties, and acted in bad faith by:  (1) removing Plaintiff and her issue as beneficiaries of the

Trusts (Count I); (2) dissipating the assets of the Trusts (Count II); and (3) wrongfully obtaining

the consent of Plaintiff and her children to a "Unitrust Election" which provides for larger

distributions to the Kaplans than to the other beneficiaries (Count III).  The Unitrust Elections

were made in 2006 and 2007 pursuant to New York Estate Powers and Trusts Law, Section 11-

2.4, and "allowed Natbony to make larger distributions to the Kaplans, as Settlors of the Trusts,

than were provided for when the Trusts were created."  (<u>Id.</u> ¶ 26)  Plaintiff and her issue

---

[1] This suit, which sought an accounting of the Trusts, was later re-filed in the Southern District
of Florida as <u>Guma Aguiar v. William Natbony, Thomas Kaplan, and Katten Muchin Rosenman</u>
<u>LLP</u>, Case No. 09-60683 (S.D. Fla.).  (Cmplt. ¶ 17 n.4)  Guma's claims in that case were later
stricken, because the Court found that he had "violated [court] orders regarding witness
tampering and intimidation," and had "acted with bad faith when he hacked into Kaplan's
email."  <u>Leor Exploration & Prod., LLC v. Aguiar</u> and <u>Guma Aguiar v. William Natbony et al.</u>,
Nos. 09-60136-CIV, 09-60683-CIV, 2010 WL 3782195, at *14 (S.D. Fla. Sept. 28, 2010).  For
these same reasons, Guma's Answer and Defenses in <u>Leor Exploration & Prod., LLC v. Aguiar</u>
were stricken.  <u>Id.</u>

consented to the Unitrust Elections based on Natbony's allegedly misleading and incomplete representations.  (Id. ¶ 27)  Plaintiff further alleges that the Kaplans aided and abetted Natbony's breach of fiduciary duty by directing Natbony to manage the trusts for their benefit (Count IV). The Defendants are all residents of New York, and Plaintiff contends that Defendants' allegedly tortious acts were committed in New York.  (Id. ¶¶ 5-7; Pltf. Br. 21)

## DISCUSSION

### I.   LEGAL STANDARD

Defendants have moved to transfer this action to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "The purpose of § 1404(a) is 'to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  In re Stillwater Min. Co. Sec. Litig., No. 02 Civ. 2806(DC), 2003 WL 21087953, at *2 (S.D.N.Y. May 12, 2003) (quoting Trehern v. OMI Corp., No. 98 Civ. 0242(RWS), 1999 WL 47303, at *1 (S.D.N.Y.  Feb. 1, 1999) (internal quotations omitted)).

"A court performs a two-part inquiry to determine whether transfer is appropriate. First, the court must determine whether the action sought to be transferred is one that 'might have been brought' in the transferee court."  In re Collins & Aikman Corp. Sec. Litig., 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006).  Second, "the court must evaluate whether transfer is warranted using several factors relating to the convenience of transfer and the interests of justice."  Id.

Accordingly, the initial question under § 1404(a) is whether the court in the proposed transferee jurisdiction had personal jurisdiction over the defendant when the action was filed:

> "The threshold question for a court considering a [transfer] under § 1404(a) is whether the action could have been brought in the district to which the moving party seeks to transfer the action." Alexander Ins. Ltd. v. Executive Life Ins. Co., No. 90 Civ. 8268, 1991 WL 150224, at *2 (S.D.N.Y. July 29, 1991). "[A]n action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court." Posven, C.A. v. Liberty Mut. Ins. Co., No. 02 Civ. 0623, 2004 WL 63497, at *7 (S.D.N.Y. Jan. 12, 2004).

Grace v. Bank Leumi Trust Co. of N.Y., No. 02 Civ. 6612 (RMB), 2004 WL 639468, at *3 (S.D.N.Y. Mar. 31, 2004) (alterations in original).

In determining whether a proposed transferee court has personal jurisdiction over a defendant, courts must look to the "state of affairs" when the action was filed:

> In Hoffman v. Blaski, 363 U.S. 335, 342 (1960), the Supreme Court ruled that in considering where an action "might have been brought," the district court must look to the state of affairs "at the time of the bringing of the action." That is, subject matter jurisdiction, personal jurisdiction, and venue would have had to have been proper in the transferee court at the time the action was filed.

Ivy Soc'y Sports Group, LLC v. Baloncesto Superior Nacional, No. 08 Civ. 8106 (PGG), 2009 WL 2252116, at *3 (S.D.N.Y. July 28, 2009). Because § 1404(a) requires personal jurisdiction at the time the action was filed, a defendant's waiver or consent to personal jurisdiction is not sufficient. See Bayer Schera Pharma AG v. Sandoz, Inc., 08 Civ. 03710 (PGG), 2009 WL 440381, at *4 (S.D.N.Y. Feb. 18, 2009) ("[A] defendant's consent to submit to jurisdiction of a proposed transferee court after an action is filed will not satisfy Section 1404(a)."); Kenwin Shops, Inc. v. Bank of Louisiana, No. 97 Civ. 907, 1999 WL 294800 (LMM), at *2 (S.D.N.Y.

May 11, 1999) (explaining that the "might have been brought" analysis in §1404(a) "focuses on the time at which the action was commenced, not on subsequent events"); Alexander & Alexander, Inc. v. Donald F. Muldoon & Co., 685 F. Supp. 346, 349 (S.D.N.Y. 1988) ("28 U.S.C. §§ 1404(a) and 1406(a) provide that a district court may transfer an action only to a district or division where the action might have been brought initially.  Venue must be proper and the defendants must be amenable to process in the transferee forum.  These requirements cannot be waived by the party seeking the transfer." (citing Hoffman , 363 U.S. at 335)); see also Schertenleib v. Traum, 589 F.2d 1156, 1161 (2d Cir. 1978) (noting that § 1404(a)  "authorize[s] transfer only to an alternative forum in which jurisdiction over the defendant could have been obtained at the time suit was brought regardless of his consent"); PI, Inc. v. Ogle, 932 F. Supp. 80, 85 (S.D.N.Y. 1996) (denying a motion to transfer where the defendant had failed to demonstrate that he was subject to personal jurisdiction in the transferee district at the time the suit was filed).

        Under § 1404, the party seeking transfer has the burden of demonstrating that transfer is appropriate.  See New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 114 (2d Cir. 2010) ("[T]he party requesting transfer [under § 1404(a)] carries the 'burden of making out a strong case for transfer.'") (quoting Filmline (Cross-Country) Prods., Inc. v. United Artists Corp., 865 F.2d 513, 521 (2d Cir. 1989)); Volkswagen De Mexico, S.A. v. Germanischer Lloyd, 768 F. Supp. 1023, 1028-29 ("An action may be transferred only to a district where it might have been brought initially.  28 U.S.C. §§ 1404(a), 1406(a).  Venue must be proper and the defendants must be subject to personal jurisdiction in the transferee forum.  The party seeking transfer bears the burden of establishing personal jurisdiction over the defendants in the transferee forum." (citing Alexander & Alexander, Inc., 685 F. Supp. at 349, 350)).

6

Accordingly, the threshold question here is whether a court sitting in the Southern District of Florida would have had personal jurisdiction over the defendants at the time this action was filed.

## II.   ANALYSIS

### A.   This Action Might Have Been Brought in the Southern District of Florida

Whether a district court in the Southern District of Florida has personal jurisdiction over Defendants depends on (1) whether jurisdiction exists under Florida's long-arm statute; and (2) whether a Florida court's exercise of personal jurisdiction over Defendants comports with federal due process.  United Technologies Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009).

#### 1.   Florida's Long-Arm Statute

Florida's long-arm statute authorizes the exercise of personal jurisdiction over a defendant "who personally or through an agent . . . commit[s] a tortious act within th[e] state." Fla. Stat. § 48.193(1)(b) (2010).  Defendants argue that the "alleged commission of a tortious act – breach of fiduciary duty and aiding and abetting that breach – causing injury to Plaintiff, an in-state resident, satisfies Florida's long-arm statute."  (Def. Br. 2)[2]

---

[2] The relevant portions of Florida's long-arm statute are as follows:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
. . .
(b) Committing a tortious act within this state.
. . .
(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

There are two lines of authority in Florida's intermediate appellate courts regarding whether injury alone satisfies the "tortious act within the state" prong of Florida's long-arm statute.  A number of Florida state courts have held that "the existence of an injury within Florida, standing alone, is insufficient to support jurisdiction over an out-of-state tortfeasor."  Kountze v. Kountze, 996 So.2d 246, 252 (Fla. 2d Dist. Ct. App. 2008); see also Consol. Energy Inc. v. Strumor, 920 So.2d 829, 832 (Fla. 4th Dist. Ct. App. 2006) (holding that injury to a Florida plaintiff caused by a tortious act committed outside the state is insufficient to provide a basis for jurisdiction under Florida's long-arm statute).  Other decisions of Florida intermediate appellate courts have reached the opposite conclusion.  See, e.g., Wood v. Wall, 666 So.2d 984, 986 (Fla. 3d Dist. Ct. App. 1996) (acts of out-of-state tortfeasors can provide a basis for the exercise of jurisdiction under Florida's long-arm statute where tortious acts were calculated to cause injury in Florida); Allerton v. State Dep't of Ins., 635 So.2d 36, 40 (Fla. 1st Dist. Ct. App. 1994) (jurisdiction proper under long-arm statute where Florida plaintiff was "injured by the intentional misconduct of a nonresident corporate employee expressly aimed at him").  The Florida Supreme Court has refused to resolve the issue, most recently in Internet Solutions Corp. v. Marshall, 39 So.3d 1201, 1206 n.6 (Fla. 2010) ("We do not decide the broader issue of whether injury alone satisfies the requirement of section 48.193(1)(b).").

While the issue is unresolved in the Florida Supreme Court, the Eleventh Circuit "has consistently held that an out-of-state tort resulting in injury in Florida subjects the actor to jurisdiction under Florida's long-arm statute."  Estate of Scutieri v. Chambers, No. 09-13562,

---

1. The defendant was engaged in solicitation or service activities within this state; or

2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use. . . .

Fla. Stat. § 48.193.

2010 WL 2836613, at *3 (11th Cir. July 20, 2010) (citing Posner v. Essex Ins. Co., 178 F.3d 1209, 1216 (11th Cir. 1999)); see also Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc., 322 F. App'x 852, 854 (11th Cir. 2009) ("Section 48.193(1)(b) of the Florida Long-Arm Statute permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state."); Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008) ("the Florida long-arm statute permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state"); Posner, 178 F.3d at 1217 ("we are bound in this case to follow this court's firmly established precedent, which interprets [Florida's long-arm statute] to apply to defendants committing tortious acts outside the state that cause injury in Florida"); Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 257 (11th Cir. 1996) ("'[J]urisdiction under § 48.193(1)(b) [is] not limited to a situation where an act in Florida cause[s] an injury in Florida but also . . . reache[s] the situation where a foreign tortious act cause[s] injury in Florida.'" (quoting Sun Bank, N.A. v. E.F. Hutton & Co., 926 F.2d 1030, 1033 (11th Cir. 1991) (internal citations omitted))).

　　　　　Given the split in Florida's intermediate appellate court case law and the failure of the Florida Supreme Court to address the issue, this Court will follow the ample Eleventh Circuit authority holding that Florida's long-arm statute provides a basis for personal jurisdiction where an out-of-state tortfeasor allegedly causes injury in Florida.  Because Defendants' alleged breach of fiduciary duty in removing Plaintiff as a beneficiary, misuse of Trust assets, and misconduct in connection with the Unitrust Election caused Plaintiff harm in Florida where she resides (see Cmplt. ¶¶ 36, 41, 48), Plaintiff has pleaded facts that would justify the exercise of personal jurisdiction over Defendants pursuant to Florida's long-arm statute.

2.      **Due Process**

"Even though a long-arm statute may permit a state to assert jurisdiction over a nonresident defendant, the due process clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"  Licciardello, 544 F.3d at 1284 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)).  Accordingly, this Court must determine whether Defendants have "minimum contacts" with Florida such that the exercise of jurisdiction over them would not "offend traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316 (internal citations omitted).

Defendants assert that they have sufficient minimum contacts to satisfy the constitutional inquiry because they are alleged to have committed an intentional tort against a Florida resident.  In support of their jurisdiction argument, they cite Brennan v. Roman Catholic Diocese of Syracuse, New York, Inc., which notes that

> so long as the purposeful conduct creates a "substantial connection" with the forum, even a single act can support jurisdiction.  Burger King Corp. [v. Rudzewicz, 471 U.S. 462, 475 (1985)].  Intentional torts are such acts and may support the exercise of personal jurisdiction over the non-resident defendant who has no other contacts with the forum.  Licciardello [v. Lovelady, 544 F.3d 1280, 1285 (11th Cir. 2008)].  In Licciardello, we held that the commission of an intentional tort by a nonresident expressly aimed at a resident, the effects of which were suffered by the resident in the forum, satisfied the "effects" test established in Calder v. Jones, 465 U.S. 783, 789-90, 104 S.Ct. 1482, 1486-87, 79 L.Ed.2d 804 (1984).  544 F.3d at 1288.  The "effects" test provides that due process is satisfied when the plaintiff brings suit in the forum where the "effects" or "brunt of the harm" caused by the defendant's intentional tortious activity was suffered. Licciardello, 544 F.3d at 1285-87.  Therefore, personal jurisdiction is proper over a defendant who commits an intentional and allegedly tortious act expressly aimed at the plaintiff in the forum state.  Id. at 1288.

Brennan, 322 Fed. App'x at 856.  In addressing whether personal jurisdiction over an out-of-state tortfeasor complies with International Shoe's requirements of "fair play and substantial

justice,"[3] the <u>Licciardello</u> court found that "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct by nonresidents causing injury in Florida."  <u>Licciardello</u>, 544 F.3d at 1288.

  The Complaint asserts that Defendants' alleged tortious acts were intentional and that the effects of these acts were felt by Plaintiff in Florida.  (<u>See</u> Cmplt. ¶¶ 36, 41, 48)  This is sufficient to meet the minimum contacts requirement and to establish that a Florida court's exercise of personal jurisdiction over Defendants comports with federal due process.

### B.   <u>Transfer is Appropriate Based On Discretionary Factors</u>

  Having determined that "the action sought to be transferred is one that 'might have been brought' in the transferee court," this Court "must determine whether, considering the 'convenience of parties and witnesses' and the 'interest of justice,' a transfer is appropriate." <u>Berman v. Informix Corp.</u>, 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998) (quoting <u>Wilshire Credit Corp. v. Barrett Capital Management Corp.</u>, 976 F. Supp. 174, 180 (W.D.N.Y. 1997)). Defendants have the burden of demonstrating that transfer is appropriate.  <u>See</u> <u>New York Marine & Gen. Ins. Co.</u>, 599 F.3d at 114 ("[T]he party requesting transfer [under § 1404(a)] carries the 'burden of making out a strong case for transfer.'") (quoting <u>Filmline (Cross-Country) Prods., Inc.</u>, 865 F.2d at 521).  "In making this determination, the Court has 'considerable discretion in adjudicating a motion for transfer according to an individualized, case-by-case consideration of convenience and fairness.'"  <u>Williams v. City of New York</u>, No. 03 Civ. 5342(RWS), 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006) (quoting <u>In re Cuyahoga Equip. Corp.</u>, 980 F.2d 110, 117 (2d Cir. 1992)).

---

[3] "These factors include the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute."  <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292 (1980).

In ruling on motions to transfer, district courts consider several factors, including:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002).

### 1.    Plaintiff's Choice of Forum

"A plaintiff's choice of forum 'is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer.'"  Hershman v. UnumProvident Corp., 658 F. Supp. 2d 598, 601 (S.D.N.Y. 2007) (quoting Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001)); see also DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 28 (2d Cir. 2002).  However,

> [t]he Second Circuit has clarified the amount of deference a plaintiff is entitled when he files a lawsuit outside of his home forum; the more such a decision is "dictated by reasons that the law recognizes as valid, the greater the deference that will be given to" it; the more it appears the decision is "motivated by forum shopping reasons," the less deference will be accorded to it.

Hershman, 658 F. Supp. 2d at 601 (quoting Iragorri v. United Technologies Corp., 274 F.3d 65, 73 (2d Cir. 2001)).

Here, Defendants argue that Plaintiff's choice of forum should be afforded less deference because the Southern District of New York is not Plaintiff's home forum and her "commencement of this suit in this Court is transparent forum shopping in an effort to avoid the litigation ongoing in the Florida courts."  (Def. Br. 23)  Plaintiff asserts, however, that "the Southern District of New York is strongly connected to the dispute.  All of the defendants reside in New York, the GRATs and Unitrust Elections were filed in New York, and the GRATs are governed by New York law.  And it is likely that Natbony's decisions to breach his fiduciary

duties to plaintiff, as well as the Kaplans' aiding and abetting in those breaches, occurred in New York." (Pltf. Br. 21)  These facts, Plaintiff argues, also demonstrate that the filing of this case was not motivated by forum shopping.  (Id. at 22)

While this action has connections to New York, because of the related actions pending in the Southern District of Florida and Plaintiff's residence in Florida, the choice of forum here appears to have been influenced by a desire to escape the taint of the unfavorable rulings in the Florida actions, in which Guma was found to have violated court orders and acted in bad faith in hacking into Defendant Kaplan's email.  See Leor Exploration & Prod., LLC v. Aguiar and Guma Aguiar v. William Natbony et al., Nos. 09-60136-CIV, 09-60683-CIV, 2010 WL 3782195, at *14 (S.D. Fla. Sept. 28, 2010).  Because Plaintiff's selection of a New York forum appears to have been "'motivated by forum shopping reasons,' . . . less deference will be accorded to [Plaintiff's choice of forum]." Hershman, 658 F. Supp. 2d at 601 (quoting Iragorri, 274 F.3d at 73).  Accordingly, the Court views this factor as neutral here.

### 2. **Convenience of Witnesses**

"The convenience of the forum for witnesses 'is probably considered the single most important factor in the analysis of whether a transfer should be granted.'" Beatie & Osborn LLP v. Patriot Sci. Corp., 431 F. Supp. 2d 367, 396 (S.D.N.Y. 2006) (quoting Schnabel v. Ramsey Quantitative Sys., Inc., 322 F. Supp. 2d 505, 516 (S.D.N.Y. 2004)).  "When weighing this factor, courts must consider the materiality, nature, and quality of each witness, in addition to the mere number of witnesses in each district." Id.  "The moving party must specify the witnesses to be called and provide general information as to what their testimony will cover." Age Group Ltd. v. Regal Logistics, Corp., No. 06 Civ. 4328(PKL), 2007 WL 2274024, at *4 (S.D.N.Y. Aug. 8, 2007) (citing Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir.

1978), abrogated on other grounds by Pirone v. MacMillan, Inc., 894 F.2d 579, 581 (2d Cir.

1990)).

 Defendants argue that several key witnesses, including Plaintiff, her children, and

other family members whose interests in the Trusts are at issue in this litigation, all reside in

Florida or spend substantial time in Florida.  (Def. Br. 21)  Plaintiff contends, however, that

Defendants have not met their burden of providing "'reliable information identifying the

witnesses involved and specifically describing their testimony.'"  (Pltf. Br. 22 (quoting Board of

Trustees v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1258 (E.D. Va. 1988))

Plaintiff also argues that the "key witnesses" reside in New York, and states that her children, if

required to testify, will travel to New York as needed.  (Id.)

 This Court concludes that Florida is a more convenient forum for witnesses,

particularly non-party witnesses.  Defendants have identified numerous witnesses located in

Florida and submitted a declaration stating that all but two of the "key witnesses" cited by

Plaintiff are either Defendants or employed by Defendants (and of these two, one is a resident of

Israel, not New York).  (See Dec. 6, 2010 Ronzetti Decl. ¶ 4)  Both sides contend that their

witnesses would be willing to travel to the other state, and both have identified at least some

witnesses who may be inconvenienced by a forum in the other state.  However, the ongoing

litigation in the Southern District of Florida will likely require the non-party "key witnesses"

identified by Plaintiff to travel to Florida, so the inconvenience for these witnesses will be

minimized if this action proceeds in the same forum as the earlier-filed cases.  Accordingly, this

factor supports transfer.

14

### 3.    <u>Location of Relevant Documents</u>

The location of documentary evidence is typically considered a neutral factor in the transfer analysis.  <u>See</u> <u>Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.</u>, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.").

Plaintiff argues that the necessary documents are located in New York.  (Pltf. Br. 23)  However, Defendants argue that most of the relevant documents "have already been produced in the Florida litigation and are maintained in Florida."  (Def. Br. 22)  Given the fact that many relevant documents are already before the Southern District of Florida, and the ease with which any remaining documents can be produced there, this factor is neutral.

### 4.    <u>Convenience of Parties</u>

Plaintiff argues that although she resides in Florida, she can easily travel to New York.  (Pltf. Br. 24)  Although Defendants reside in New York, they must travel to Florida for the ongoing litigation in the related cases.  Therefore, this factor weighs in favor of a Florida forum.

### 5.    <u>Locus of Operative Facts</u>

"The locus of operative facts is an 'important factor to be considered in deciding where a case should be tried.'"  <u>Age Group Ltd. v. Regal Logistics, Corp.</u>, No. 06 Civ. 4328(PKL), 2007 WL 2274024, at *3 (S.D.N.Y. Aug. 8, 2007) (quoting <u>800-Flowers, Inc. v. Intercontinental Florist, Inc.</u>, 860 F. Supp. 128, 134 (S.D.N.Y. 1992)).  "To determine where the locus of operative facts lies, courts look to 'the site of events from which the claim arises.'"  <u>Id.</u> (quoting <u>800-Flowers</u>, 860 F. Supp. at 134).

Defendants argue that the locus of operative facts is Florida, because "[t]he alleged misrepresentations to Plaintiff and her alleged injury occurred in Florida.  Natbony traveled to Florida and met with attorneys in Florida regarding the Aguiars' interest in the GRATS.  Additionally, the lawsuits that Plaintiff alleges are part of Thomas Kaplan's vendetta against the Aguiars were filed and are currently pending in Florida."  (Def. Br. 22)

Plaintiff asserts that the locus of operative facts is New York "because the trusts were created in New York and all of the decisions relating to the trusts were made in New York by New York residents, including defendants."  (Pltf. Br. 24)  Furthermore, New York law governs the trusts and the trusts and Unitrust Elections were filed in New York.  (Id.)

Although the Florida lawsuits are part of the "'offensive' across 'the broadest front imaginable'" that Kaplan allegedly launched against Guma and his family (Cmplt. ¶ 1), the actual breaches of fiduciary duty – which are what the claims in this suit are based on – allegedly occurred primarily in New York.  This factor therefore weighs against the motion to transfer.

**6.     Availability of Process to Compel Attendance of Unwilling Witnesses**

"'The availability of process to compel the testimony of important witnesses is an important consideration in transfer motions.'"  Billing v. Commerce One, Inc., 186 F. Supp. 2d 375, 378 (S.D.N.Y. 2002) (quoting Arrow Electronics v. Ducommun, Inc., 724 F. Supp. 264, 266 (S.D.N.Y. 1989)).  Under Federal Rule of Civil Procedure 45, a district court can enforce a trial subpoena served on a witness within the state or within 100 miles of the court.  However, "even if [a party's] witnesses do refuse to testify, deposition testimony is an acceptable alternative."  Farberware Licensing Co. LLC v. Meyer Mktg. Co., No. 09 Civ. 2570(HB), 2009 WL 1357956, at *2 (S.D.N.Y. May 14, 2009).

Defendants argue that several non-party witnesses who are Florida residents – and thus outside the subpoena power of this Court – may be required to testify.  (Def. Br. 22)  Plaintiff, however, asserts that all key witnesses reside in New York and those that do not can be deposed in Florida and their testimony used in New York.  (Pltf. Br. 24)

Defendants have not produced affidavits or other evidence indicating that any of their anticipated witnesses are unwilling to testify, and – in the event that out-of-state witnesses refuse to testify – deposition testimony is an acceptable alternative.  Therefore, this factor is neutral.

### 7.   The Forum's Familiarity With The Governing Law

Although the parties do not dispute that New York law applies to this dispute (see Def. Br. 24), "'[t]his Court has routinely held that the 'governing law' factor is to be accorded little weight on a motion to transfer venue . . . because federal courts are deemed capable of applying the substantive law of other states.'"  Ivy Soc'y Sports Group, LLC v. Baloncesto Superior Nacional, No. 08 Civ. 8106(PGG), 2009 WL 2252116, at *8 (S.D.N.Y. July 28, 2009) (quoting Prudential Sec. Inc. v. Norcom Development, Inc., No. 97 Civ. 6308(DC), 1998 WL 397889, at *6 (S.D.N.Y. July 16, 1998)).   Accordingly, this factor is neutral.

### 8.   Trial Efficiency And The Interests Of Justice, Based On The Totality Of The Circumstances

"[T]he Supreme Court has held that the consideration of the 'interest of justice' factor encompasses the private and public economy of avoiding multiple cases on the same issues."  Williams, 2006 WL 399456, at *3 (citing Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960)).  "[C]ourts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative."  Id.

17

Defendants argue that trial efficiency supports a transfer to Florida because "[r]elated cases are already pending there, and the court in Florida is already familiar with the facts and issues in those related cases and the substantial discovery conducted."  (Def. Br. 23-24) Plaintiff argues that the cases in Florida do not share the same claims, parties, and facts, and therefore this factor does not support transfer.  (Pltf. Br. 25)

This Court concludes that this factor strongly supports transfer to the Southern District of Florida.  The cases pending in Florida involve the same issues as here.  Indeed, the Complaint in this action begins by alluding to the dispute between Defendant Thomas Kaplan and Guma which is the backdrop for the two Southern District of Florida actions:  "This lawsuit arises from actions taken by defendant Thomas Kaplan ('Kaplan') as a result of a bitter business dispute with his nephew, Guma Aguiar ('Guma'), a non-party to this action.  As a result of this business dispute with Guma, Kaplan launched what he termed an 'offensive' across 'the broadest front imaginable' which included the wrongful acts against plaintiff Aguiar – Kaplan's sister and Guma's mother – that give rise to this action."  (Cmplt. ¶ 1)

Similarly, in the New York action, Plaintiff alleges that Guma was told he would receive "a portion of his share of the proceeds of the Leor sale as a beneficiary of Kaplan's GRAT" (Cmplt. ¶ 16), while in Guma's Florida action, Guma alleges that the Trusts "were created for the benefit of Kaplan and his family, as well as [Guma] and his family, including [Guma's] mother."  (Ronzetti Decl., Ex. E (Guma Aguiar v. William Natbony et al., Case No. 09-60683-CIV-Seitz/O'Sullivan (S.D. Fla.)) ¶ 23)  Leor's Florida suit against Guma seeks a declaratory judgment that Guma is not entitled to a share of the trusts.  (Ronzetti Decl., Ex. D (Leor Exploration & Production LLC, et al. v. Guma Aguiar, Case No. 09-60136-CIV-Seitz/O'Sullivan (S.D. Fla.)) ¶ 60)

In the New York action, Plaintiff alleges that Natbony improperly removed Plaintiff and her issue as a contingent beneficiary of the Trusts in a 2009 Amendment, while in Guma's Florida suit he claims that "Natbony – acting as trustee of the family trusts – chose that time to follow through on his long-held intent to completely remove [Guma] and his family members as beneficiaries of both trusts . . . [by] caus[ing] the family trust instruments to be amended so as to eliminate [Guma's] interest in the trusts, as well as the interests of his family members."  (Ronzetti Decl., Ex. E (<u>Guma Aguiar v. William Natbony et al.</u>) ¶ 44)

In the Complaint before this Court, Plaintiff alleges that "Natbony failed to fully inform the beneficiaries of their rights related to the Unitrust Election . . . [and] intentionally concealed from the beneficiaries the facts necessary for plaintiff Aguiar to make an informed decision. . . ."  (Cmplt. ¶¶ 45, 47)  Guma's Florida suit includes a similar allegation:  Guma claims that Natbony "undertook efforts to convert the trusts to 'unitrusts.' . . . This again favored Kaplan and the Kaplan-related entities over [Guma] and his family, who also were beneficiaries of the family trusts.  However, contrary to his obligations as [Guma's] lawyer and as trustee of the trusts, Natbony failed to fully inform [Guma] of the consequences of the unitrust conversion, and did not give [Guma] a full opportunity to learn about or approve of this conversion."  (Ronzetti Decl., Ex. E (<u>Guma Aguiar v. William Natbony et al.</u>) ¶¶ 30-31)  Both the New York action and Guma's lawsuit allege that Natbony's omission of material information about the consequences of the Unitrust conversion induced the Aguiars to approve the conversion, which they would not have done had they been fully informed.  (<u>See</u> Cmplt. ¶ 48; Ronzetti Decl., Ex. E (<u>Guma Aguiar v. William Natbony et al.</u>) ¶ 31)

Because the issues that would be litigated in the New York action are similar or identical to the issues that have been litigated in the Florida lawsuits for some time, this factor strongly favors transfer to the Southern District of Florida.

*       *       *       *

Most of the factors which this Court must consider in conducting a § 1404(a) analysis are neutral here.[4]  The convenience of witnesses and the parties factors weigh slightly in favor of transfer, while the locus of operative facts suggests that New York is the appropriate forum.  The most compelling factor here, however, is judicial efficiency and the interests of justice.  The same issues are presently before the Southern District of Florida in two separate lawsuits.  In this bitterly and hotly contested maelstrom of litigation, it makes no sense for a court in New York to consider the same issues that have been and will be litigated in two separate actions in the Southern District of Florida.  Moreover, given the findings of litigation misconduct made in the Southern District of Florida, and the fact that Plaintiff is a Florida resident, the New York action is tainted by forum-shopping.

---

[4]  The litigants have made no arguments concerning the relative means of the parties.

## CONCLUSION

For the reasons stated above, Defendants' motion to transfer to the Southern District of Florida (Docket No. 23) is GRANTED, and the remaining motions to dismiss or stay are denied as moot.  The Clerk of the Court is directed to terminate Defendants' motions and to transfer this action to the Southern District of Florida.

Dated: New York, New York
       May 16, 2011

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

21